ORAL ARGUMENT NOT YET SCHEDULED

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
)
STATE OF NEW YORK, *et al.*,            )
)
                               Petitioners,       )
)    No. 21-1028
v.                                      )    (and consolidated cases)
)
U.S. ENVIRONMENTAL              )
PROTECTION AGENCY, *et al.*,    )
)
                              Respondents.      )
_____)

## UNOPPOSED MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR

Respondents United States Environmental Protection Agency and Administrator Michael Regan (collectively, "EPA" or "the Agency"), respectfully move for an order remanding without vacating EPA's final action titled "Review of the Ozone National Ambient Air Quality Standards," 85 Fed. Reg. 87,256 (Dec. 31, 2020) ("2020 Ozone NAAQS Decision"), which is under review in these consolidated petitions. EPA also requests a stay of the January 5, 2024 deadline for the parties to submit proposed schedules for merits briefing, pending the Court's action on EPA's request for remand of the case. Counsel for EPA has conferred with counsel for Petitioners and Intervenors in these consolidated cases and is authorized to state that no party opposes the relief requested in this motion.

## BACKGROUND

The Clean Air Act, 42 U.S.C. §§ 7401-7671q, establishes a comprehensive program to protect and enhance the Nation's air quality through a system of shared federal and state responsibility. *Id.* § 7401(b)(1). Central to this program are the national ambient air quality standards ("NAAQS"), which EPA sets to limit the concentration of certain air pollutants in the ambient air to protect against the pollutants' effects on public health and welfare. *Id*. §§ 7408–09. EPA has established NAAQS for six common air pollutants, including ozone and related photochemical oxidants ("Ozone NAAQS"). 40 C.F.R. pt. 50. EPA is required to periodically review both the standards and the air quality criteria (the scientific information on which the standards are based) and, if appropriate, make revisions. 42 U.S.C. § 7409(d). The Act also requires that EPA appoint an independent scientific review committee, the Clean Air Scientific Advisory Committee ("Advisory Committee"), which must advise EPA on the agency's review of the air quality criteria and on appropriate revisions to the NAAQS. *Id*. § 7409(d)(2).

When EPA conducts this periodic review, it reviews current scientific literature on known and anticipated effects on public health and welfare associated with the particular pollutant in the ambient air. *See* attached Declaration of Joseph ("Goffman Decl."), ¶ 12. As part of the review of the science, EPA's practice is to develop a document called an Integrated Science Assessment. *Id.* Based on

2

information in the Integrated Science Assessment, as well as other relevant information, EPA may also prepare quantitative analyses of exposure and risk to public health and environment, as appropriate, from various ambient levels of the pollutant. Goffman Decl. ¶ 13. And EPA's practice is to develop a Policy Assessment in which it evaluates the scientific evidence and technical information described in the Integrated Scientific Assessment and related exposure and risk analyses to inform the Administrator's policy judgments in the review, including consideration of whether to revise or retain a NAAQS. Goffman Decl. ¶ 14. Before these documents are finalized, EPA's practice is to provide drafts of the Integrated Science Assessment, the Policy Assessment, and any quantitative risk/exposure analyses for review by the Advisory Committee, as well as an opportunity for public comment. Goffman Decl. ¶ 12.

To assist the Advisory Committee in its review, EPA has historically established pollutant-specific expert review panels. Goffman Decl. ¶ 15. EPA does so both because it frequently seeks the Advisory Committee's advice on multiple NAAQS reviews simultaneously, and because each NAAQS review covers a broad array of scientific issues. *Id.*

EPA most recently revised the Ozone NAAQS in 2015. 80 Fed. Reg. 65,292 (Oct. 26, 2015). In the 2020 Ozone NAAQS Decision challenged here, EPA decided to retain the 2015 Ozone NAAQS. In the assessment preceding that

3

decision, EPA prepared an Integrated Science Assessment ("2020 Science Assessment"), quantitative analyses of the risks to public health and the environment from exposure to ozone, and a Policy Assessment ("2020 Policy Assessment"). EPA presented those documents to the Advisory Committee for review. Rather than forming a traditional ozone-specific review panel, EPA provided the Advisory Committee with a pool of expert consultants to respond to written questions. Comparing the process in that review cycle to the traditional review process, the Advisory Committee recommended that EPA "consider restoring a traditional interactive discussion process in which the [Advisory Committee] can interact directly with external expert panels," and further stated: "interactive discussion between the [Advisory Committee] and a pollutant-specific review panel, enables significantly more discussion and deliberation among experts with differing backgrounds and opinions, potentially resulting in a more comprehensive examination of some controversial topics." Letter from Louis Anthony Cox, Jr., Chair, Clean Air Scientific Advisory Committee, to Administrator Andrew R. Wheeler, Re: CASAC Review of the EPA's Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards (External Review Draft – October 2019), Consensus Responses to Charge Questions at 1 (February 19, 2020), available at https://casac.epa.gov/ords/sab/f?p=

113:0:5537166072354:APPLICATION_PROCESS=REPORT_DOC:::REPORT_ID:1075.

On January 20, 2021, President Biden issued an "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis," which directed review of certain agency actions taken from January 20, 2017, until January 20, 2021. Exec. Order No. 13990, 86 Fed. Reg. 7037 (Jan. 25, 2021). After reviewing the 2020 Ozone NAAQS Decision, on October 29, 2021, EPA announced its decision to initiate proceedings to reconsider that action. Goffman Decl. ¶ 19. At EPA's request, on December 21, 2021, the Court held these cases in abeyance. Doc. 1927582.

As part of its reconsideration proceeding, EPA convened an 18-member ozone-specific review panel ("Review Panel") to assist the seven-member Advisory Committee. Goffman Decl. ¶ 21. EPA also developed an updated draft Policy Assessment ("2022 Draft Policy Assessment"), which it provided to the Advisory Committee and Review Panel and on which it sought public comment. Goffman Decl. ¶ 22. As noted in that document, EPA planned to reconsider the 2020 Ozone NAAQS Decision "based on the existing scientific record and in a manner that adheres to rigorous standards of scientific integrity and provides ample opportunities for public input and engagement." 2022 Draft Policy Assessment at

1–13, available at https://www.epa.gov/system/files/documents/2022-04/o3_reconsideration_draft_pa-v_final-compressedfinal.pdf.

Following several public meetings of the Review Panel and briefings from EPA staff, the Advisory Committee provided EPA with comments and advice reflecting its "evaluation of the scientific issues in the [2020 Science Assessment] to inform its future review of the [2022 Draft Policy Assessment]." *See* Letter from Dr. Elizabeth A. Sheppard, Re: CASAC Review of the EPA's Integrated Science Assessment (ISA) for Ozone and Related Photochemical Oxidants (Final Report - April 2020) (Nov. 22, 2022) (EPA-CASAC-23-001), at 1, available at https://casac.epa.gov/ords/sab/f?p=113:12:362646059624:::12.

Responding to comments in the Advisory Committee's November 2022 letter, EPA created a revised draft Policy Assessment ("2023 Draft Policy Assessment"), which it presented to the Review Panel and Advisory Committee.[1] Goffman Decl. ¶ 25. The Advisory Committee and Review Panel then held additional public meetings, and on June 9, 2023, the Advisory Committee issued its final report on the 2023 Draft Policy Assessment ("2023 Advisory Committee

---

[1] While the Advisory Committee's November 2022 letter focused on the 2020 Integrated Science Assessment, it also included comments that referenced the Policy Assessment, and consideration of those comments led to development of the 2023 Draft Policy Assessment. See 2023 Draft Policy Assessment, at 1–16, available at https://www.epa.gov/system/files/documents/2023-03/O3_Recon_v2_Draft_PA_Mar1-2023_ERDcmp_0.pdf

6

Report"), available at https://casac.epa.gov/ords/sab/f?p=113:12:362646059624 :::12.  This report stated the Advisory Committee's view that the 2023 Draft Policy Assessment was missing important analyses and information.  *See* Goffman Decl. ¶¶ 29–32 (summarizing report).  Among other things, in the June 9 report, the Advisory Committee:  opined that the 2023 Draft Policy Assessment did "not provide sufficient information to adequately consider alternative form and level combinations," 2023 Advisory Committee Report at 9; recommended that EPA "incorporate the information available from epidemiological studies" in risk assessments supporting the 2023 Draft Policy Assessment, *id.* at 4; and referenced several new studies that were published recently and were not included in the 2020 Science Assessment, Cover letter from Dr. Elizabeth Shepherd (June 9, 2023) at 4.  Relying in part on those new studies, the June 9 report conveys the recommendation of all but one member of the Advisory Committee that the primary and secondary Ozone NAAQS be revised.  *Id.* at 4–5.

The EPA Administrator responded by noting that the Advisory Committee had "identified several issues arising in the reconsideration that warrant additional evaluation and review . . . including newly available information that has not yet been integrated into the air quality criteria and the value of developing additional analyses to inform further evaluation of the current standards."  Letter from EPA Administrator Regan (Aug. 18, 2023), at 1–2, available at https://casac.epa.gov/

7

ords/sab/f?p=113:12:362646059624:::12. "Given the scope of those issues," and EPA's obligation to periodically review the NAAQS and the air quality criteria, the Administrator "decided that the best path forward is to initiate a new statutory review of the ozone NAAQS and the underlying air quality criteria and to wrap the EPA's reconsideration process of the 2020 ozone NAAQS decision into that review." *Id.*

## STANDARD OF DECISION

This Court will "generally grant an agency's motion to remand so long as the agency intends to take further action with respect to the original agency decision on review." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (internal quotation marks omitted). "An agency may obtain a remand without confessing error, so long as it genuinely intends to reconsider, re-review or modify its original decision." *Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 719 (D.C. Cir. 2021) (internal quotation marks omitted). In deciding a motion to remand, the Court will "consider whether the agency has provided a reasoned explanation for a remand, whether its motion is frivolous or made in bad faith, and whether granting the motion would unduly prejudice the non-moving party." *Id.* (internal citations and quotation marks omitted).

## ARGUMENT

The Court should grant EPA's motion for a voluntary remand of the 2020 Ozone NAAQS Decision. As explained in the attached declaration of Joseph Goffman, EPA has initiated a full NAAQS review, and incorporated its reconsideration of the 2020 Ozone NAAQS Decision into that review, to support its work addressing "significant issues" that the Advisory Committee and Review Panel recently identified. Goffman Decl. ¶¶ 33–34. EPA's decision to reconsider its prior action, particularly based on new information, is well-recognized as a basis for voluntary remand. *Util. Solid Waste Activities Grp.*, 901 F.3d at 436; *see also SKF USA Inc. v. United States*, 254 F.3d 1022, 1027–30 (Fed. Cir. 2001) (discussing bases for voluntary remand). In seeking remand, EPA does not, and need not, confess error. Goffman Decl. ¶ 34. But the Agency is committed to conducting a transparent, scientifically rigorous review that provides opportunities for public input and engagement. *See* Goffman Decl. ¶¶ 39–42 (discussing steps in EPA's review). EPA will complete review "as expeditiously as possible," Goffman Decl. ¶ 38, and, indeed, has already commenced it, Goffman Decl. ¶ 39. Thus, EPA's motion is supported by a reasoned basis and is neither frivolous nor made in bad faith.

Remanding this case would avoid "wasting the courts' and the parties' resources." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993).

9

"Administrative reconsideration is a more expeditious and efficient means of achieving adjustment of agency policy than is resort to the federal courts." *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Commonwealth of Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)). That is particularly true where, as here, no party has yet filed merits briefs supporting or opposing the action under administrative reconsideration.

Finally, granting EPA's motion for remand of these cases would not prejudice a non-moving party as no party opposes EPA's requested relief.

## CONCLUSION

For the foregoing reasons, the Court should remand without vacating the 2020 Ozone NAAQS Decision. EPA further requests that the Court stay the parties' deadline to propose a schedule for merits briefing in these cases until it acts on EPA's motion for voluntary remand. This motion is unopposed.

January 3, 2024

Respectfully submitted,

*/s/ Andrew S. Coghlan*

ANDREW S. COGHLAN
U.S. Department of Justice
Environment and Natural Resources
  Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 514-9275

andrew.coghlan@usdoj.gov

*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d), I hereby certify that the foregoing complies with the type-volume limitation because it contains 1,964 words, according to the count of Microsoft Word.

/s/ Andrew S. Coghlan
ANDREW S. COGHLAN

# CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

<u>/s/ Andrew S. Coghlan</u>
ANDREW S. COGHLAN